UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| M.H., T.B., et al., | ) |
|     Plaintiffs, | ) No. 24-cv-12051 |
| v. | ) |
| | ) Magistrate Judge Keri L. Holleb Hotaling |
| ALEX J. ADAMS, in his official capacity as the Director of Idaho Department of Health and Welfare, et al., | ) |
|     Defendants, | ) |
| v. | ) |
| WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH, | ) |
|     Third-Party Subpoena Recipient. | ) |

## MEMORANDUM OPINION AND ORDER

In the wake of *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), Illinois enacted the Lawful Health Care Activity Act, 735 ILCS 40/28, *et seq*. ("the Act"), to ensure "that Illinois would remain a beacon of hope and an island for reproductive justice for all who seek it" and that "[a] medical decision should be made between a patient and their doctor – no one else." *See* Press Release, Gov. Pritzker Signs Sweeping Reproductive Rights Protection Into Law (Jan. 13, 2013), *available at* https://www.illinois.gov/news/press-release.25906.html (last visited May 1, 2025). The Act "[s]hields individuals in Illinois from subpoenas, summons, or extraditions related to lawful reproductive or gender affirming care in Illinois" and "[r]equires courts in Illinois to apply Illinois law in cases involving reproductive health care." *Id*. In a case of first impression in federal court involving the Act, the World Professional Association for Transgender Health ("WPATH"), an Illinois non-profit organization, invokes the Act and raises other arguments in response to a third-party subpoena ("the Subpoena") (Dkt. 1-2) issued to it by the Director of the

Idaho Department of Health and Welfare (the "Director") relating to *M.H. v. Smith et al.*, C.A. No. 22-409 (D. Idaho) ("the Underlying Action"). The Underlying Action involves two transgender Idahoans who sued directors of two Idaho departments of government challenging an Idaho Medicaid policy and state law that exclude coverage and/or the use of state funds for certain healthcare or procedures for transgender individuals. The plaintiffs in the Underlying Action rely upon WPATH's promulgated standards of care for the treatment and health of transgender and gender diverse people to support their claims that the Idaho policy and law operate to deny them healthcare that is medically necessary.

WPATH moves to quash the Subpoena, and the Director moves for civil contempt. The fully briefed motions are before the Court. For the reasons set forth below, the Court denies WPATH's motion to quash to the extent WPATH contends the Act requires quashing the subpoena; as set forth below, the remaining arguments remain under advisement. The Director's motion for civil contempt is denied.

## BACKGROUND

WPATH is "a non-profit" and "international membership organization" whose "mission is to promote evidence-based care, education, research, public policy, and respect in transgender health." (Dkt. 1-6 ¶¶ 6, 7, 9.)[1] "WPATH members engage in clinical and academic research to develop evidence-based medicine." (*Id.* ¶ 7.) WPATH itself "establish[ed] and update[s] the WPATH Standards of Care (SOC) for the treatment and health of transgender and gender diverse people globally." (*Id.*) The "SOC articulate a professional consensus about the psychiatric, psychological, medical, and surgical management of transgender and gender diverse people." (*Id.*) Volunteer "medical experts every year" help WPATH "to understand the latest science," and also

---

[1] Throughout this opinion, to the extent the page numbers in the docket file-stamp heading at the top of any docketed item differs from those at the bottom of the pages, the Court defaults to the page numbers at the top of the page.

"review and edit [WPATH] publications, educational materials, curriculum, and public statements." (*Id*. ¶ 14.)

According to WPATH, on September 6, 2024, the Director served the Subpoena, with a return date of October 7, 2024, at 5:00 p.m., upon WPATH. (Dkt. 1 at 3.) The parties disagree on the exact order of events, but, between October 4, 2024 and October 9, 2024, WPATH retained counsel, who sought and received from the Director an extension until October 31, 2024 to respond to the Subpoena.[2] (Dkt. 1 at 4; Dkt. 1-5 ¶ 5; Dkt. 5 at 4). Late in the evening of October 7, 2024, WPATH sent written objections to the Subpoena to the Director and followed up with a call on October 10, 2024, to indicate its inclination to produce documents previously produced in another case, *Boe v. Marshall*, No. 2:22-cv-184-LCB (M.D. Alabama), if the Director provided a comparison of the Subpoena's requests to those in *Boe*. (Dkt. 5 at 4.) On October 23, 2024, the Director provided the comparison, and the parties discussed it on October 24, 2024. (*Id*.) Without further communication, on November 12, 2024, WPATH disclosed it would not make the anticipated production. (*Id*.)

On November 22, 2024, WPATH initiated this case seeking to quash the Subpoena on the grounds that: (1) the Act shields WPATH from disclosure, rendering the Subpoena unenforceable; (2) the Subpoena seeks irrelevant discovery; (3) the Subpoena requests are unduly burdensome to WPATH; and (4) enforcement of the Subpoena would infringe upon WPATH's First Amendment speech and associational rights. The Director contends that: (1) the motion to quash does not comply with N.D. Ill. Local Rule ("LR") 37.2 and is untimely; (2) the Act does not apply to the Subpoena; (3) any First Amendment privilege claim was waived or fails on the merits; and (4) the

---

[2] The parties provide different timelines for WPATH's retention of counsel and the parties' conversations, and the Director insists he extended only WPATH's "*production* deadline." (Dkt. 1-5 ¶ 5; Dkt. 5 at 4.) Such disputes are immaterial to the Court's resolution of this issue.

3

Subpoena seeks relevant discovery that is not unduly burdensome. The parties consented to proceed before a magistrate judge. (Dkt. 7.) At a motion hearing on February 6, 2025, the Court requested additional submissions regarding the legislative history of the Act and any case law interpreting it. Those submissions are now before the Court. (Dkt. 34; Dkt. 35.)

## DISCUSSION

### I. TIMELINESS AND COMPLIANCE WITH LOCAL RULES

The Court first addresses the Director's arguments that WPATH's motion to quash is untimely and failed to comply with N.D. Ill. LR 37.2 by neglecting to specify the date, time, place, and participants in WPATH's good-faith attempts to resolve the parties' differences regarding the Subpoena.

Under Federal Rule of Civil Procedure 45, a subpoena recipient's "objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed R. Civ. P. 45(d)(2)(B). "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). As one court noted, "[u]nlike the fourteen day time limit for serving objections, Rule 45 does not fix the time for filing motions to modify or quash subpoenas" but merely requires that they "be timely filed. *Natural Res. Def. Council, Inc. v. Ill. Power Res., LLC*, No. 13-CV-1181, 2015 WL 13940045, at *3 (C.D. Ill. May 12, 2015) (citing Fed. R. Civ. P. 45(d)(3)(A)). Although "[s]ome courts have held that motions to quash or modify subpoenas must be filed within the time limits for objections set forth in Rule 45(d)(2)(B)," others "have held that such motions are timely if filed before the time set for compliance with the subpoena. *Id*. (citations omitted). That Court held that "the fourteen day time limit for serving written objections to subpoenas should not automatically apply to motions to modify or quash subpoenas." *Id*. *See also*

4

*In re Kraft Heinz Sec. Litig.*, No. 19-cv-1339, 2022 WL 19830663, at *2 (N.D. Ill. Dec. 5, 2022) (finding motion to quash "timely" under Rule 45 where the subpoena recipient's counsel remained in contact with counsel for the issuer, "otherwise responded to the subpoena, and promptly moved to quash once the parties' disputes were ripe").

The Court declines to find WPATH's motion to quash untimely or fatally insufficient under the Court's local rules, because: (1) the motion to quash raises important issues of law; (2) WPATH's counsel was in contact with the Director's counsel despite not having provided all grounds for its delay; and (3) the Director has identified no prejudice stemming from WPATH's delay. Thus, under these unusual circumstances, the Court finds good cause to reach the merits of the motion to quash. *See In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*, 581 F. Supp. 3d 509, 517 (S.D.N.Y. 2022) (citing its broad discretion and finding "good cause [] to overlook Movant's delay in filing" its motion to quash because it had received the subpoena five days before the return date and diligently sought counsel to contest it in good faith, there was no claim or support for any prejudice, and the party serving the subpoena had also not taken aggressive action to enforce the subpoena within the delay period); *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 320 (S.D.N.Y. 2018) (invoking Court's broad discretion to consider motion to quash despite timeliness concerns given "important interests articulated," including personal jurisdiction arguments); *WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 893–95 (S.D. Ind. 2006) (overruling timeliness objection to motion to quash where subpoena was broad and issued to a non-party that contacted issuer's counsel regarding concerns).

## II. THE ACT DOES NOT REQUIRE QUASHING THE SUBPOENA

WPATH contends the Act shields it from complying with the Subpoena. WPATH argues that, by creating and promulgating SOC for gender dysphoria, it engages in lawful health care activity as defined under the Act, and that the Act therefore protects against the Subpoena. The

5

Director insists the Act has no implication here. This appears to be a case of first impression; no federal court has yet interpreted the Act in a situation such as this, where a third-party foreign subpoena was issued to an Illinois non-profit like WPATH.

This issue turns on the Act itself. "The fundamental rule of statutory construction requires courts to determine and give effect to the legislature's intent." *Jordan v. Dominick's Finer Foods*, 115 F. Supp. 3d 950, 955 (N.D. Ill. 2015) (citing *General Motors Corp. v. Pappas*, 950 N.E.2d 1136, 1146 (Ill. 2011)). "[W]here a statute has not been judicially interpreted, as is the case here, Illinois courts are guided by both the statute's plain language and the legislative intent behind it."[3] *Pastors Protecting Youth v. Madigan*, 237 F. Supp. 3d 746, 749 (N.D. Ill. 2017) (citing *People v. Hanna*, 800 N.E.2d 1201, 1207 (Ill. 2003); *Lake Cty. Bd. of Review v. Prop. Tax Appeal Bd.*, 548 N.E.2d 1129, 1136 (Ill. App. Ct. 1989)).

The Act generally bans the provision of information or expenditure of any State resource "to assist any individual, or out-of-state officer, official, agency, entity, or department seeking to impose civil or criminal liability upon a person or entity for lawful healthcare activity," 735 ILCS 40/28-11, and accordingly forbids an Illinois "clerk of court" from issuing (and permits a recipient to move to modify or quash) "a subpoena based upon a foreign subpoena that" either "requests information or documents related to lawful health care activity" or "is related to the enforcement of another state's law that would interfere with an individual's rights under the Reproductive

---

[3] No party uncovered any case analyzing the Act or its purpose. WPATH revealed one state court case in which the trial court quashed a subpoena issued to WPATH under the Act, *Noe v. Parson, et al.*, No. 2024-MR-3 (Kane Cty, Ill.) (Order of Sept. 27, 2024). Neither the resulting Order nor the transcript of the motion to quash hearing, however, disclose that court's analysis or application of the Act's text or purpose to WPATH or the subpoena in question there. (Dkt. 1-4; Dkt. 35-2.) The court stated that, although "inclined to deny [WPATH's] motion for a lot of other reasons," the court would nevertheless "grant the[] motion"; the judge explained, without any further analysis or elaboration that, "[s]ince we have the statute in Illinois, constitutional or not, I think I have to at least follow that one for now." (Dkt. 35-2 at 21:7-12.)

6

Health Act." 735 ILCS 35/3.5(b), (e).[4] The Act defines "[l]awful health care" in relevant part as "the treatment of gender dysphoria . . . , including, but not limited to, all supplies, care, and services of a medical, behavioral health, mental health, surgical, psychiatric, therapeutic, diagnostic, preventative, rehabilitative, or supportive nature that is not unlawful under the laws of this State . . . ." 735 ILCS 40/28-10. "Lawful health care activity" is defined as "seeking, providing, receiving, assisting in seeking, providing or receiving, providing material support for, or traveling to obtain lawful health care." 735 ILCS 40/28-10.

Following oral argument, the Court understands the parties essentially to agree that, if the Court finds WPATH engages in lawful health care activity regarding which the Subpoena seeks information, the Court could, pursuant to Rule 45(d)(3)(A)(iii), quash the Subpoena. The parties further agree that the Act by its plain language indicates an intention to protect "individuals seeking [lawful health care] procedures in Illinois and those providing their treatment" against certain occurrences. (*See* Dkt. 1; Dkt. 34 at 6.) Legislative commentary regarding the Act's scope and purposes similarly explain the Act was meant to shield "patients, families, and providers," "from foreign subpoenas, summonses, extradition and foreign judgments related to . . . gender-affirming care in Illinois[.]" (*See* Dkt. 34-4 at 8.)[5]

WPATH does not contend it is comprised of individuals seeking or receiving lawful health care in Illinois. (*See* Dkt. 1 at 6.) And, at oral argument, WPATH's counsel conceded that WPATH is not a doctor, hospital, or other direct provider of health care procedures in Illinois. (Tr. of Feb. 6, 2025 Mot. Hrg. at 9:18-21.) When pressed regarding which of WPATH's actions bring it within

---

[4] The Director argues this language directing Illinois clerks of courts not to issue subpoenas does not apply in federal court (Dkt. 5 at 9-11); the Court understands WPATH's argument to be not that Illinois law prevents issuance of the Subpoena but that the Illinois law demonstrates an intent to shield certain types of information from disclosure, in the nature of a privilege or other protection. (*See* Dkt. 6 at 3-4); *see also* Fed. R. Civ. P. 45(3)(A)(iii).

[5] The Court's determination is unaffected by the legislative history.

7

the Act, WPATH's counsel explained that it was through setting and providing the SOC for gender dysphoria treatment. (*Id*. at 8:5-17, 8:20-9:5-17, 9:22-25; *see also* Dkt. 1 at 6 ("WPATH, a professional association that sets the standard of care for gender-affirming medical care, engages in lawful healthcare activity by 'providing,' 'assisting in . . . providing,' and 'providing material support' for the treatment of gender dysphoria . . . by issuing clinical guidelines on the widely-accepted standard of care for gender dysphoria.").)

In WPATH's post-argument filing, WPATH additionally asserts it "helps patients locate healthcare providers" and would also "meet[] the definition of a 'provider' . . . because its membership is primarily comprised of medical professionals[.]" (Dkt. 35 at 5.) WPATH waived those arguments by not presenting and supporting them sooner. *See Swiecichowski v. Dudek*, 133 F.4th 751, 756 n.4 (7th Cir. 2025) ("[A]rguments raised for the first time in reply are waived.") (citation omitted). Even had WPATH preserved the arguments, WPATH provided no facts indicating that it helps or in what way it "helps patients locate healthcare providers" here in Illinois (*see* Dkt. 1-6, Dkt. 35 at 5), and the Court cannot discern any Subpoena requests that would implicate those activities. And, although the Act may protect WPATH's Illinois *provider members* (if there are any) against subpoenas related to their lawful health care activities within the Act's terms, the Court sees no statutory basis for stretching provider members' protection to WPATH, an organization to which those providers happen to belong, at least where, as here, no Subpoena requests seek member-providers' treatment records related to lawful health care activity.

The Director insists WPATH is not within the Act's intended swath because neither the Act nor its legislative history mentions "researchers, advocates, and non-profits like WPATH[.]" (Dkt. 34 at 6.) The Director too broadly focuses on WPATH's general advocacy and research activities and its non-profit status (Dkt. 34 at 5), none of which, in the Court's view, would be pivotal regarding whether the Act shields against the Subpoena; an entity, after all, might be

8

shielded for some acts (which qualify as lawful health care activity) and not for others. But the Court cannot discern from the Act's language or the stated legislative intent that the creation or issuance of standards of care regarding treatment for gender dysphoria would fall within the definition of "lawful health care activity." *See* 735 ILCS 40/28-10.

As noted above, legislative text and commentary (and even later statements regarding the Act) addressed protections for "patients, families, and providers" against "foreign subpoenas, summonses, extradition and foreign judgments related to lawful . . . . gender-affirming care in Illinois." (Dkt. 34-4 at 8, 34; Dkt 1.) *See also* 735 ILCS 40/28-10; 735 ILCS 35/3.5(a). WPATH is none of those under the circumstances presented here, although the Court could envision statutory protection for a non-profit organization like Planned Parenthood Federation of America, Inc. against a subpoena seeking information about its patients and providers in Illinois. And, while the phrase "providing material support for" lawful health care activity broadens the Act's coverage to individuals or entities beyond the person receiving or providing the lawful health care, the parties provided little to aid in interpreting the meaning of "providing material support" for lawful health care activity. The Court's research disclosed that providing material support, in other contexts, has been found to encompass donating funds, *see S.A.B. v. Boente*, 847 F.3d 542, 545 (7th Cir. 2017), "supplying information to the Cambodian Freedom Fighters (CFF) about the Cambodian government's plans to arrest CFF members and about the strength of the Cambodian military in certain areas," *Choub v. Gonzales*, 245 F. App'x 618, 619 (9th Cir. 2007), and providing interpreter services for a terrorist organization leader during medical appointments and social events, *see Jabateh v. Lynch*, 845 F.3d 332, 340-41 (7th Cir. 2017). Each suggests more direct involvement than creating and broadly distributing general guidelines or protocols in a professional field. On the information at hand, the Court concludes WPATH's asserted conduct here—compiling information to create standards for the treatment of gender dysphoria—does not

9

constitute providing or providing material support for a lawful health care activity within the meaning of the Act; the Act therefore does not provide a basis to quash the subpoena under Rule 45(d)(3)(A)(iii).

The following additional and related points bolster that conclusion on the issues here. First, standards of care are routinely established through expert testimony subject to cross-examination and other rigors. *See, e.g., Wand v. Johnson*, No. 18-CV-500-WMC, 2022 WL 1404259, at *2 (W.D. Wis. May 4, 2022) (issuing subpoenas for witnesses listed as experts to testify regarding "applicable protocols for nurses treating patients with symptoms of appendicitis"); *S.W. by & through Wojcehowicz v. United States*, No. 1:19-CV-2947, 2021 WL 915900, at *2 (N.D. Ohio Mar. 10, 2021) (requiring submission of "expert report under Rule 26(a)(2)(B) before" witness could "offer[] testimony on the applicable standard of care"); *Blanquart v. Kalayil*, 2025 IL App (2d) 240217-U, ¶ 76 (explaining that plaintiff bears "the burden to present expert testimony" showing "the defendant 'deviated from the standard of care'") (citation omitted). It strikes the Court as doubtful that information related to WPATH's SOC would be rendered undiscoverable without a clear legislative indication that result was intended.

Second, although legislators sought to prevent the "criminaliz[ation of] parents seeking healthcare for their children" or people just "looking for help" (Dkt. 34-4 at 6), *see* 735 ILCS 735 ILCS 40/28-10; 735 ILCS 35/3.5(a), the Subpoena was not issued in relation to a state's attempts to enforce its laws criminalizing or penalizing what in Illinois is lawful health care. Instead, the Director seeks the information as part of its defense against claims brought by Idaho residents claiming that WPATH's SOC establish the standard of care for gender dysphoria and that a failure to follow the SOC violates their rights. WPATH consistently trumpets that its SOC are "widely accepted" and "articulate a professional consensus about the psychiatric, psychological, medical, and surgical management of transgender and gender diverse people" (Dkt. 1-6 ¶ 7) and thus

10

appears to desire its SOC be wielded as plaintiffs in the Underlying Action are wielding them—as incontrovertible treatment specifications. The stated purposes of the Act do not neatly encompass WPATH's gambit to cloak from inquiry its SOC under these circumstances. Accordingly, the motion to quash is denied on this ground.

### III. WPATH'S REMAINING ARGUMENTS

WPATH raises two other arguments in support of its motion to quash—that the Subpoena imposes an undue burden upon WPATH and violates the First Amendment rights of its members. Although the Court has expended considerable effort attempting to resolve WPATH's challenges on those grounds, the parties' submissions provide insufficient information, particularly because the Court is not familiar with the Underlying Action and issues. The Court orders the following: (1) within seven days of the date of this ruling, the counsel for the parties shall meet and confer in person or through videoconference (not telephone) to attempt to agree on the scope of WPATH's production in light of this ruling and then, within four days of their conference, the parties shall jointly report the result of their conference; and (2) upon receipt of the parties' joint report, the Court will determine whether further briefing from the parties is necessary in advance of a hearing on the Subpoena or whether, at this stage, the Subpoena should be transferred to the issuing court pursuant to Federal Rule of Civil Procedure 45(f). *See, e.g., In re Watts Coordinated Pretrial Proceedings*, No. 19-cv-1717, 2024 WL 3470596, at * (N.D. Ill. July 19, 2024) (transferring subpoena to other district that was "well-acquainted with the facts of this case and [] in a superior position to resolve the subpoena issue").

### IV. MOTION FOR CIVIL CONTEMPT

The Director's motion for civil contempt is denied. Although the Court denied WPATH's chief ground for quashing the Subpoena in its entirety, and WPATH certainly could have been more forthcoming in its communications with the Director, this motion consumed significant

11

judicial time and resources. The Court held a lengthy hearing, and all involved conducted and compiled research to interpret a relatively new Illinois law. The Court declines to award sanctions here, given that WPATH's motion to quash presented such a novel and weighty issue of law.

## CONCLUSION

For the reasons stated herein, the Court denies WPATH's motion to quash (Dkt. 1) to the extent WPATH argues that the Act requires quashing the Subpoena in full; WPATH's remaining arguments remain under advisement. By 5/9/2025, counsel for the parties shall meet and confer in person or through videoconference (not telephone) to attempt to agree on the scope of WPATH's production in light of this ruling and then, by 5/13/2025, the parties shall jointly report the result of their conference. Upon receipt of the parties' joint report, the Court will determine whether further briefing from the parties is necessary in advance of a hearing on the Subpoena or whether, at this stage, the Subpoena should be transferred to the issuing court pursuant to Federal Rule of Civil Procedure 45(f). The Director's motion for civil contempt (Dkt. 13) is denied.

ENTERED: May 2, 2025

_____
Hon. Keri L. Holleb Hotaling
United States Magistrate Judge